UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GREGG HANSEN,

         Plaintiff,

    v.

MARIN GENERAL HOSPITAL, et al.,

         Defendants.

Case No.  17-cv-03473-WHO

**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND DENYING MOTIONS FOR ENTRY OF DEFAULT JUDGMENT AND FOR IN HOME DIALYSIS.**

Re: Dkt. Nos. 90, 92, 93, 94, 95, 96, 97, 99, 114.

Plaintiff Gregg Hansen brings a host of claims against defendants Dr. Lawrence Levy, Dr. Genevieve Estilo, Marin Nephrology, Marin General Hospital ("MGH"), Anthem Blue Cross Life and Health Insurance Co. ("Anthem"), Sutter Health, Satellite Dialysis ("Satellite"), Centers for Medicare and Medicaid Services ("CMS"), and Swedish Medical Center ("Swedish"). These claims center on Hansen's need for dialysis and the mistreatment that he has allegedly suffered while trying to secure access to a workable dialysis option. His Third Amended Complaint ("TAC") represents his fourth attempt to bring a claim on which relief can be granted. Dkt. No. 89.

Hansen's motion for entry of default against Satellite is denied and Satellite's motion to dismiss for failure to timely serve is granted, but Hansen is given leave to personally serve Satellite. As to remaining motions to dismiss, at this juncture Hansen has adequately pleaded his claim for medical negligence against Drs. Levy and Estilo and MGH, but only for acts occurring on or after April 4, 2016. Hansen may be able to allege acts of medical malpractice against Satellite and Marin Nephrology, but again, only for acts that occurred on or after April 4, 2016. Hansen is giving one more attempt to amend his breach of contract claim against some of the

1    defendants, so that he can identify the applicable contracts.

2         Hansen also appears to allege a claim for "discrimination" under the Americans with

3    Disabilities Act, with respect to his attempts to seek medical treatment at MGH with his service

4    dog, but the defendants against whom that claim may lie (namely MGH and Dr. Levy) have not

5    had notice of it because of the confusing manner in which it was alleged; they will be given

6    another chance to respond to it.  However, Hansen's monopoly claim, as well as all claims

7    asserted against Swedish and CMS must be dismissed with prejudice.

8         Finally, Hansen's motion for in home dialysis is DENIED, because it seeks relief without

9    any identified authority for it.  I will, instead, treat Hansen's request for in home dialysis as a

10   ground for relief related to his surviving (for now) medical malpractice and breach of contract

11   claims.

12                                    **BACKGROUND**

13   **I.      FACTUAL BACKGROUND**

14        I accept Hansen's allegations as true.  Hansen was hospitalized from April 2011 to January

15   2013 following a serious car accident.  TAC ¶ 6.  During that time, he received a liver and

16   pancreas transplant at UCLA, and was put on dialysis until he could receive a kidney transplant.

17   *Id.* ¶ 7.  In January 2013, Hansen began dialysis treatments at defendant Satellite Dialysis,

18   receiving dialysis 3 times a week, 3 hours per session.  *Id.* ¶ 8.  By 2014, Satellite Dialysis, under

19   the direction of Dr. Levy and Dr. Estilo, increased the amount of dialysis to 3.5 hours per session,

20   which was unbearable for Hansen and caused him to suffer side effects including insomnia and the

21   shakes.  *Id.* ¶ 11.  Hansen complains that the dialysis he received at Satellite was not "customized"

22   to fit his situation and was not sanitary because they reused filters.  *Id*. ¶¶ 9, 12.

23        In 2014, he asked Dr. Levy to recommend an out-of-state transplant for him because the

24   wait to get a transplant in California was between 8 and 9 years at that point, whereas Seattle,

25   Washington only had a 2.5 year waiting list.  *Id.* ¶ 14.  Hansen had already been waiting for 2.5

26   years, so Dr. Levy recommended him for an out-of-state transplant.  *Id.*

27        On July 22, 2014, Hansen went to defendant Swedish in Seattle with a caregiver for what

28   was supposed to be a one-day meeting, with Hansen expecting Swedish to approve him for a

                                          2

kidney transplant if he passed some tests.  *Id.* ¶ 15.  Dr. Reddy at Swedish explained that he did

not believe that Hansen would pass the tests, but would allow Hansen to attempt to do so because

of Dr. Reddy's relationship with Dr. Levy.  *Id.*  Eight months later, in April 2015 Hansen passed

all the medical tests and was told that he could receive a kidney as early as the following week.

*Id.* ¶¶ 16-17.

>    After he passed the tests, a social worker then asked Hansen questions regarding who

would care for him after the transplant and about his being repeatedly late to dialysis 9 months

before.  *Id*. ¶ 18.  Hansen explained that the ambulance company he used for transport had been

late due to circumstances out of his control.  *Id.*  The social worker requested to speak with Dr.

Levy.  *Id.* Hansen subsequently received a letter from Swedish that said he was "not compliant

with UCLA," which meant he could not receive the transplant.  *Id.* ¶¶ 18-19.  Swedish claimed

that it received information regarding Hansen's alleged non-compliance from Dr. Levy.  *Id.* ¶ 19.

>    While trying to resolve the compliance issues, Hansen established that Dr. Levy was lying

about Hansen's non-compliance; UCLA said that Hansen was 100% compliant.  *Id.* ¶¶ 19-20.  A

social worker at Satellite Dialysis also confirmed Hansen's compliance.  *Id.* ¶ 20.  After Hansen

proved that Dr. Levy lied regarding his compliance with UCLA, Dr. Levy decided to drop him as

a patient and gave him 60 days to find a new doctor for dialysis but had "blackballed" Hansen, so

Hansen could not secure dialysis from any provider in Marin County.  *Id.* ¶ 21.  All of the doctors

on the referral list provided by Satellite refused to take Hansen as a patient.  *Id*. ¶ 22.  That left

Hansen with one option, to receive dialysis on an emergency basis at the emergency room.  *Id.*

>    Hansen contacted Anthem, his PPO, to find a doctor, but Anthem did not help because it

viewed Medicare as Hansen's primary insurance and Anthem as secondary.  *Id.* ¶ 23.  Further, his

primary doctor at Sutter Health would only refer him to Dr. Levy.  *Id.*¶ 24.

>    Hansen ended up going to defendant MGH for emergency dialysis and was checked into

MGH for 17 days.  *Id*. ¶ 24.  However, Dr. Levy runs the dialysis at MGH, which has led to

Hansen being harassed at the hospital and being "turned away" and told to come back later

because only Dr. Levy could decide when he received treatment.  *Id*. ¶¶ 24-25.  Hansen alleges

that Dr. Levy had a conflict of interest after turning him away from Satellite and then regulating

3

his receipt of dialysis at MGH. *Id.* ¶ 26. He complained about his mistreatment through his advocate at MGH and to the CEO of Satellite. *Id.* ¶ 27.

Hansen's ability to receive dialysis at MGH only on an emergency basis and often being turned away or accused by MGH personnel of "faking" his condition has led to a lack of adequate treatment and serious medical complications, including heart damage. *Id.* ¶¶ 28-30. He complains that Dr. Levy's lies about his status have prevented him from receiving a kidney transplant and prevented his recovery. *Id.* ¶ 33.

Hansen also alleges instances of harassment on the part of MGH related to his service dog. Specifically, the security guards harass him when he attempts to bring his service dog into the hospital during emergencies. The guards told Levy he needed to leave his dog in the car, but then the guards called the Humane Society to report the dog in the car. *Id.* ¶ 34. Hansen points to three specific visits. In June 2017, he left his service dog in his car with a water dish; the security guards called the Humane Society, which resulted in Hansen being harassed by the police and the Humane Society, as well as his car being towed. *Id.* ¶ 35. In July 2017, after giving his keys to security in order to move his car to covered parking, the security guards instead "smashed up" Hansen's car and again called the Humane Society to remove the dog. *Id.* ¶ 36. To get his dog back, Hansen had to sign a contract with the Humane Society that he would no longer leave the service dog in his car. *Id.*

The last incident that Hansen points to in his TAC occurred on September 9, 2017. After waking up with chest pains, Hansen drove himself to MGH, where he showed the security guards the contract with Humane Society. *Id.* ¶ 37. The security guard called the police, who, upon arrival, told Hansen that he must either, "1. Leave without getting medical attention. 2. Put the dog in the car. [or] 3. Get arrested and get medical." *Id.* A doctor informed the police officer that Hansen was too sick to go to jail and needed dialysis. *Id.* ¶ 38. After he received dialysis, Hansen was arrested and taken to jail; he was released because of his medical condition. *Id.* Hansen was transported back to MGH, where he underwent a psychological evaluation. *Id.* ¶ 39. Hansen subsequently discharged and drove himself home. *Id.*

## II.    PROCEDURAL BACKGROUND

Hansen filed this action in the Superior Court of California, County of Marin on April 4, 2017, asserting five causes of action: (1) violation of California's Unfair Competition Law ("UCL"); (2) malpractice; (3) discrimination; (4) breach of contract; and (5) monopoly. Notice of Removal, Ex. A at 1 (Dkt. No. 1-1). In June 2017, the case was removed to this Court. After three sets of defendants filed motions to dismiss, Hansen filed a First Amended Complaint ("FAC") on July 5, 2017, asserting the same claims. Dkt. No. 17. The defendants subsequently moved to dismiss the FAC. At the hearing on these motions, Hansen informed me that he had filed a Second Amended Complaint ("SAC") the previous day. Given this, I granted the defendants' motion to dismiss, confirmed that Hansen knew of the assistance provided by the Court's Legal Help Center, and gave defendants 20 days to respond to the newly filed SAC. In October 2017, defendants moved to dismiss the claims contained in the SAC. After holding a hearing on the motions to dismiss in December 2017, I granted the motions and dismissed the SAC in its entirety. December Order, Dkt. No. 85.

I addressed each claim in turn and explained in detail what was either missing from Hansen's allegations or why the claims could not otherwise proceed. Concerning his malpractice claim, I explained that Hansen's SAC: (i) did not specifically identify how each of the defendants' had a duty to him that was breached by their conduct; (ii) Hansen needed to allege dates for each of the alleged acts of malpractice in order to fall within the applicable statute of limitations;[1] and (iii) with respect to CMS, he would need demonstrate the filing of an administrative tort claim of medical malpractice before a claim against CMS could go forward.

Regarding his discrimination claim, I noted that, from his allegations, I could not readily ascertain a plausible theory of discrimination. I explained that Hansen needed to allege that he received different treatment from the defendants on the basis of a protected classification (*e.g.*, race, disability status, gender). As to his breach of contract claim, I informed Hansen that a

---

[1] I noted that the statute of limitations for medical malpractice is three years after the date of the injury or one year after the plaintiff discovers, or using reasonable diligence should have discovered, the injury. Cal. Code of Civ. Proc. § 340.5.

successful claim would need to allege the existence of a specific contract that each defendant had with him and how he, she, or it breached it.[2] For his monopoly claim, I explained that given the numerous antitrust laws, it was unclear what type of monopoly claim that Hansen sought to bring, but explained what he would need to allege in order to state a monopolization claim under the Sherman Act. Finally, regarding Hansen's UCL claim, I explained that Hansen did not "clearly identify an unlawful, unfair, or fraudulent business practice or act performed by any defendant" or allege sufficient facts that he suffered an economic loss caused by any of the defendants.

I granted Hansen leave to amend all of his claims, with the exception of the UCL and the breach of contract claims against CMS. Hanen subsequently filed his TAC, asserting the same five claims. Six groups of defendants again move to dismiss all claims against them for failure to state a claim (Dkt. Nos. 92, 93, 94, 95, 96, 97) and Satellite separately moves to dismiss for failure to timely serve. Dkt. No. 99.

## III.    ADDITIONAL PLEADINGS AND ALLEGATIONS

Since the motions to dismiss were filed, Hansen and the parties have submitted additional pleadings and notices. On April 5, 2018, Hansen filed a "motion for in home dialysis," arguing that he was entitled to less expensive and less painful in home dialysis, as opposed to the emergency dialysis he had been receiving for the past two years. Dkt. No. 114. Defendants generally oppose that "motion," pointing out that Hansen has not identified any legal requirement that would mandate in home dialysis, his existing claims do not seek and do not provide for this type of relief, and – for CMS – that Hansen has not exhausted the required administrative proceedings required under the Medicare Act. Dkt. Nos. 118 (Anthem), 119 (MGH), 120 (CMS), 121 (Levy, Estilo, Marin Nephrology), 122 (Swedish). In response, Hansen filed a number of declarations explaining his belief that in home dialysis would be cheaper and safer. Dkt. Nos. 123, 125. On June 11, 2018, Hansen filed a declaration in support of his oppositions, claiming he had been attacked by Dr. Levy while receiving dialysis at MGH, which is another reason he

---

[2] I dismissed the breach of contract claim against CMS, as being within the exclusive jurisdiction of the United States Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491(a)(1).

believes he should receive in home dialysis.  Dkt.  No. 126. On July 5, 2018, Hansen filed a declaration claiming that defendants are retaliating against him, including by refusing to prescribe his dialysis medications.  Dkt. No. 127.  In that same filing, Hansen filed a "motion" asking the Court to commit him to jail for two weeks, based on his belief that he would be able to secure better and more efficient dialysis if he were in jail.  *Id*.

On May 15, 2018, defendants filed a notice of pendency of other action, identifying a case Hansen filed in Marin County Superior Court against defendants Levy, Estilo, Marin Nephrology, and MGH (as well as the Marin Sheriff's Department and towing companies) regarding Hansen's claims of "harassment," abuse of his service dog, and towing of his car when Hansen attempts to secure dialysis from MGH.  Dkt. No. 124.  In his pleadings here, Hansen complains about defendants' conduct in those state court cases, including defendants alleged failure to provide him notice of court hearings, failure to appear in state court, and defendants' efforts to have the state court declare Hansen a vexatious litigation.  *See* Dkt. No. 127 at ECF pgs. 7-18.

On July 30, 2018, defendants filed a second notice of pendency of other action, noting that on June 25, 2018 Hansen had filed another lawsuit in Marin Superior Court against Levy, Estilo, Marin Nephrology, and MGH complaining about the care he was receiving at MGH and that Levy had improperly communicated with plaintiff directly, instead of having defense counsel communicate with Hansen.  Dkt. No. 128.

On August 6, 2018, Hansen filed an opposition to defendants' notices of pendency, complaining again about the harassment of Hansen and his dog and the substandard care at MGH.  Dkt. No. 129.  On August 23, 2018, Hansen filed a declaration, asserting that defendants were unsuccessful in their attempts to get Hansen declared a vexatious litigant, and complained of more harassment and physical abuse of himself and his dog at MGH.  Dkt. No. 131.  On August 28, 2018, Hansen filed a declaration asking again for default to be entered against Satellite and for in home dialysis.  Dkt. No. 132.

### LEGAL STANDARD

Under Rule 8(a), "[a] pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction . . .; (2) a short and plain statement of the

claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief." The short and plain statement requirement is not a heavy one, plaintiffs are not required to set out the facts supporting their claim in detail, but just a statement of the claim "'that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

That said, under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Pro se pleadings must be held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Nevertheless, a complaint, or portion thereof, should be dismissed if it fails to set forth "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 554. "[A] district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quotations

omitted).

## DISCUSSION

### I. HANSEN'S MOTION FOR DEFAULT AND SATELITTE'S MOTION TO DISMISS

As noted, on February 28, 2018, Hansen filed a motion for "default judgment" against Satellite, arguing that default judgment should be entered against Satellite because it did not respond to this case. Dkt. No. 90. Satellite separately moves to dismiss for failure to timely serve. Dkt. No. 99.

Entry of default judgment is not appropriate because Satellite has appeared, specifically to contest service. Even assuming that Satellite was properly served (which it was not, as addressed below) and assuming that Satellite did not respond within the appropriate time, default judgment will not be entered because default judgments "are generally disfavored" and "[w]henever it is reasonably possible, cases should be decided upon their merits." *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985). Hansen's motion for entry of default judgment is DENIED.

Satellite moves to dismiss because Hansen did not properly serve the initial complaint while the case was pending in Marin Superior Court; Hansen only attempted service by sending a copy by certified mail to the agent for service of process for Satellite Healthcare, Inc. Declaration of Susan Del Bene (Dkt. No. 100, ECF pgs. 7-8) ¶ 2. After the case was removed to this Court, Hansen filed the FAC which did not name Satellite Health, but instead named Satellite Dialysis as a defendant. Hansen sent a copy of the FAC by mail to Satellite Healthcare's San Jose corporate office, but Hansen never personally served a copy of the FAC on Satellite. *Id*. ¶¶ 3-5. Satellite informed Hansen by mail on August 27, 2017 and by follow up emails through February 2018 that Satellite's position is that it has not been properly served and that it does not consent to the jurisdiction of this Court. Dkt. No. 100 at ECF pgs. 17, 19-21, 28.

Hansen never served his SAC or his TAC on Satellite – either Satellite Healthcare, Inc. in San Jose or Satellite Dialysis in Greenbrae, California by any means. *See* Del Bene Decl. ¶¶ 3-5;

Declaration of Nilda Flores (Dkt. No. 100 at ECF pgs. 23-23) ¶ 3.[3]  Satellite argues that service by mail, without personal service, is not sufficient under Federal Rule of Civil Procedure 4 or under California Code of Civil Procedure 416.10.  Satellite also argues that, by the time it filed its motion to dismiss on March 14, 2018, the 90 day period for service provided by Rule 4(m) had passed and that this case be dismissed as to it because of the failure to timely serve.  Dkt. No. 99.

Satellite is correct – both that service was not effective and that service was not timely – but its objections get it only so far.  As for service, forcing a pro se litigant to go through the expense of personal service, in lieu of agreeing to accept service by mail and waiver, serves little obvious purpose except to force this case to continue.  But that is Satellite's choice to make. Dismissal for failure to timely serve is not mandatory, and courts may grant additional time for service in their discretion.  *Mann v. Am. Airlines*, 324 F.3d 1088, 1091 (9th Cir. 2003).  Additional time for service is appropriate in this case, especially because Satellite had actual notice of the lawsuit, there is no prejudice to Satellite, the delay by Hansen has not been excessive (because Hansen plausibly believed as a pro se litigant that service was accomplished), and not giving Hansen additional time to serve may result in statute of limitations issues for Hansen's claims against Satellite.  *See Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007).

Satellite's motion to dismiss for failure to personally serve process in this case is GRANTED.  However, Hansen is given 60 days from the date of this Order to personally serve Satellite Dialysis.  Hansen shall personally serve, meaning any person over the age of 18 hand deliver, a copy of his Third Amended Complaint along with a summons to Satellite Dialysis at 565 Sir Francis Drake Boulevard, Greenbrae, California.[4]  That service, if accomplished, shall

---

[3] Hansen does not dispute this other than saying that he had Dr. Levy personally served at Satellite Dialysis in Greenbrae and "served" Satellite Healthcare via their agent for service of process.  Dkt. No. 111.  But the evidence Hansen submits shows that the original complaint was served on Satellite/Del Bene by certified mail and by personal service on Drs. Levy, Estilo and Marin Nephrology.  Dkt. No. 112 at ECF pgs. 9-13.

[4] To the extent there is any ambiguity over whether Hansen intends to sue Satellite Dialysis, located in Greenbrae, California or the apparent corporate parent, Satellite Healthcare, Inc., any such ambiguity shall be resolved in Hansen's favor.  "Satellite Dialysis" is listed in the TAC, has specially appeared in this action through counsel, and because Satellite Dialysis does not argue it is not the correct defendant (if properly served), I will consider Satellite Dialysis the appropriate defendant for Hansen's claims.

1 constitute valid service on defendant Satellite and allow this case to proceed against Satellite.

## II.     MERITS OF MOTIONS TO DISMISS

Turning to the merits of the other defendants' motions to dismiss, I address each claim in turn.

### A.     Malpractice

In order to sufficiently plead medical malpractice, a plaintiff must allege: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." *Jackson v. Johnson*, 5 Cal. App. 4th 1350, 1355 (1992).  For purposes of establishing breach of duty in a medical malpractice case, a plaintiff must show that the physician's performance fell before the "care ordinarily possessed and exercised by members of the medical profession under similar circumstances." *Avivi v. Centro Medico Urgente Med. Cntr.*, 159 Cal. App. 4th 463, 470 (2008).

#### 1.     Levy, Estilo, and MGH

Hansen alleges that Levy, Estilo, and MGH have not given him the medical attention that he needs.  TAC ¶ 46.  Specifically, he asserts that Levy refused to treat him and prevented his treatment by others while sabotaging Hansen's ability to get a transplant.  Further, he contends that Levy decides when he receives dialysis at MGH.  Concerning MGH, Hansen states that he was denied treatment on multiple occasions, resulting in heart damage.  TAC ¶¶ 28-30, 37-38.[5]

As an initial matter, Hansen has a statute of limitations problem with respect to alleged acts of medical malpractice by the doctors or MGH.  Any known alleged acts of malpractice related to his dialysis treatments (or refusal thereof) that occurred **prior to April 4, 2016** are

---

[5]  MGH contends that these allegations do not amount to specific allegations regarding a breach of the standard of care by any medical provider.  MGH Mot. at 12.  But Hansen alleges that on April 17, 2017 and September 4, 2017, healthcare providers at MGH turned him away without allowing him to receive dialysis, resulting in health complications and specific harms.  Similarly, the allegations that Dr. Levy allegedly decides when Hansen receives dialysis and restricts his dialysis at MGH, construed broadly, also support a malpractice claim against Dr. Levy.

barred.[6]  However, as pleaded in his TAC, there are allegations with respect to Dr. Levy and MGH of incidents of deficient medical treatment occurring *after* April 4, 2016.  TAC ¶¶ 21, 28-30.

There are very few mentions of what Dr. Estilo may have done with respect to Hansen and his treatment at either Satellite or MGH in the TAC.  Specifically, Hansen alleges that Dr. Estilo, along with Dr. Levy, increased Hansen's dialysis time in 2014, causing Hansen to suffer.  TAC ¶ 11.  But that claim is barred by the statute of limitations.  Hansen also generally alleges that Dr. Estilo, along with Dr. Levy and MGH, have not given him the medical attention he needs from 2013 through the present.  *Id*. ¶ 46.  That conclusory statement is too general keep Dr. Estilo in this case.  Hansen needs to plead *facts* showing that Dr. Estilo has provided or supervised or otherwise impacted Hansen's access to or receipt of dialysis at some point on or after April 4, 2016.  However, Dr. Estilo is mentioned in some of the summaries attached to Hansen's TAC as exhibits.  *See, e.g.*, Dkt. No. 89 at ECF pg. 34 (detailing complaints made to Dr. Estilo by Hansen in October 2016 and Dr. Estilo's responses); ECF pg. 66 (detailing interaction with Dr. Estilo).  Therefore, it appears that Hansen has (or at least intends to) complain of acts taken by Dr. Estilo with respect to his treatment at MGH.  While a court is not required to plod through hundreds of pages of exhibits to ascertain whether a claim has been raised, the exhibits in this case do provide some clarity to support Hansen's medical malpractice claim against Dr. Estilo.

Reading the TAC generously, and as informed by the exhibits, Hansen has adequately alleged medical malpractice claims against Drs. Levy and Estilo and against MGH – but those claims are **limited** to events occurring **on or after April 4, 2016**.  That means that Hansen cannot continue to pursue claims based on denials of treatment that occurred *prior* to April 4, 2016 because those claims are barred by the one year statute of limitations.

Dr. Levy, Dr. Estilo, and MGH's motion to dismiss the medical malpractice claim is DENIED with respect to claims arising on or after April 4, 2016.

---

[6] This case was filed in Marin County Superior Court on April 4, 2017. Dkt. No. 1 (Notice of Removal).

### 2. Satellite and Marin Nephrology

Hansen alleges that Satellite did not give him customized dialysis, reused filters putting him in danger, and "blackballed" him from receiving treatment elsewhere. As an initial matter, it remains unclear when each of these acts occurred. It would appear that many, if not all of the actions by Satellite, fall outside the one year statute of limitations for medical malpractice claims because they occurred in 2014 and 2015. TAC ¶¶ 11-12. Hansen complains that he was receiving services from Satellite (as the "Dialysis center") as late as July 2016. TAC ¶¶ 21, 22, 28. But it is unclear why Hansen claims that Satellite breached its duty of care to him in terms of the medical services he was being provided by Satellite on or after April 4, 2016, or whether the only claim he has against Satellite is based on its refusal to treat him after July 2016. Hansen needs to allege specific facts about Satellite's acts on or after April 4, 2016 in order to maintain a medical malpractice claims against Satellite.

While Marin Nephrology is named as a defendant under each cause of action, Hansen alleges no facts about it. I cannot tell who that entity is or how it is related to the claims he alleges against the other defendants. Hansen's TAC sometimes refers to "The Dialysis Center." TAC ¶ 26. It is unclear which entity Hansen is referring to when he uses the phrase "The Dialysis Center," either Satellite or Marin Nephrology. If Hansen wants to proceed with claims against Marin Nephrology, he must identify facts explaining who Marin Nephrology is and what the entity or its employees did to him to make it liable for his claims.

This claim is DISMISSED with leave to amend as to Satellite and Marin Nephrology.

### 3. Swedish

Hansen alleges that Dr. Reddy at Swedish first believed Dr. Levy's information about Hansen's noncompliance in 2014, and then ignored his e-mails discrediting Dr. Levy's statements about Hansen's noncompliance, presumably because he was applying to work for Dr. Levy. *Id.* ¶ 48. The last mention of anything done by anyone at Swedish in Hansen's complaint was in July 2015; in the Exhibits to TAC, Hansen includes a March 17, 2016 letter from Swedish explaining that he was declined for a transfer because of certain criteria. ECF pg. 96. Even more significantly, Hansen's allegations establish that he knew the alleged reason why Swedish

declined the transplant (Levy's lies and Reddy's connections to Levy) as far back as 2015 and that he had his social worker inform Swedish and its board of the same in February 2016. *Id.* ECF pg. 101; *see also id.* at ECF pg. 72 (plaintiff know of his theory prior to March 2016). Therefore, Hansen knew he would not receive a kidney back in 2015 and knew of the cause of any potential medical malpractice claim against Swedish no later than February or March 2016. Any malpractice claim against Swedish is barred by the one year statute of limitations.

This claim is DISMISED WITH PREJUDICE against Swedish.

### 4. Sutter Health & Anthem

The only specific allegations against Sutter Health and Anthem are that they would not refer him to any other doctors, presumably after he was cut off by Dr. Levy in July 2016. TAC ¶¶ 23-24, 44, 47. In his opposition brief regarding Sutter (Dkt. Nos. 105), Hansen complains about Sutter's failure of their duty to "provide a level of healthcare" by providing him with referrals. Dkt. No. 105.

Hansen's claim against Anthem is undermined by the allegation at paragraph 23 of the TAC that Anthem *did*, in fact, provide him with a list of 80 referrals. TAC ¶ 80. The larger problem for Hansen, however, is that there are no allegations in the TAC that a Sutter or Anthem doctor or other employee provided Hansen with inadequate medical *treatment*. A claim for medical malpractice depends upon the existence of a "physician/patient relationship" that creates a duty of care between the medical provider and the patient. *See, e.g., Felton v. Schaeffer*, 229 Cal. App. 3d 229, 234 (1991). In none of Hansen's complaints or exhibits to date is there any indication that his claims are based on inadequate treatment provided by a Sutter or Anthem employee. Absent those types of allegations, and absent any case law providing that an insurer (as opposed to a medical practitioner employed by that insurer) can be liable for "medical malpractice," this claim is DISMISSED WITH PREJUDICE against Sutter and Anthem.

### 5. CMS

Hansen's only allegations regarding CMS are that CMS's regulations result in under-staffing at "dialysis centers" and that it has created a system where patients stay in dialysis instead of receiving transplants. TAC ¶ 49. He does not assert that any defendant accused of committing

14

malpractice is a CMS employee. Absent evidence that an employee breached a duty of care in provision of medical services to Hansen, Hansen cannot state a medical malpractice claim against CMS.[7] In addition, even if he could amend to allege deficient medical treatment by an employee of CMS, Hansen has not alleged that he has exhausted his administrative remedies under the Federal Tort Claims Act ("FTCA"). As I explained in my prior Order, to seek damages against federal entity CMS for a malpractice claim, Hansen must have filed a claim under the FTCA. December Order at 5. Despite my directions, Hansen has not alleged he has filed a FTCA claim or otherwise exhausted his administrative remedies against CMS.

The malpractice claim against CMS is DISMISSED with prejudice.

### 6. Summary

Hansen's claims for medical malpractice may proceed against Dr. Levy, Dr. Estilo, and MGH, but those claims may only be based on acts that occurred on or after April 4, 2016. If Hansen can allege facts that a medical practitioner employed by Satellite or Marin Nephrology provided him deficient treatment on or after April 4, 2016, he is given leave to amend attempt to plead those facts in a Fourth Amended Complaint.

The medical malpractice claims against Swedish, Sutter, Anthem, and CMS are DISMISED WITH PREJUDICE.

### B. Discrimination

#### 1. Generally

In my prior Order, I found that Hansen's allegations of "discrimination" were too vague to ascertain his theory of discrimination. December Order at 5. I advised him that one way in which he could state a claim for discrimination was to allege that he received different treatment from the defendants on an improper basis, such as his race, disability status, religion, or gender or some other qualifying reason, and how he was damaged by it. *Id.* In the TAC, Hansen adds some allegations, regarding the denial of the kidney transplant and being blackballed from medical treatment, but his amendments do not cure the deficiencies I identified for this type of

---

[7] As to CMS, Hansen alleges only that CMS has imposed regulations that encourage hospitals to fail to adequately treat patients. *Id.* ¶¶ 49, 50.

discrimination claim. He does not claim and does not plead facts suggesting that he was

discriminated against by any defendant, or provided unequal treatment by any defendant, based on

a protected classification like race, religion, gender, etc. Therefore, his general allegations – that:

(i) defendants denied him the medical attention he needed, and Dr. Levy blackballed him to deny

him treatment; (ii) Dr. Levy and Dr. Reddy at Swedish denied him the transplant he needed; (iii)

Dr. Levy, Satellite, and other dialysis centers discriminated against him and other patients,

presumably by denying access to transplants, to make money; and (iv) Medicare failed to stand up

to Dr. Levy – do not support a claim for "discrimination" under federal "civil rights" statutes. *See*

TAC ¶¶ 52-59.[8]

## 2.    ADA and Civil Rights

However, as added and somewhat clarified in the TAC, Hansen argues that he was

discriminated against under the Americans with Disabilities Act because MGH barred his service

dog and then harassed him and his dog by forcing him to leave his service dog in his car, leading

to his inability to secure the medical treatment he needed and, in at least one set of events, his

arrest. This conduct, according to Levy, violated the Americans with Disabilities Act ("ADA")

and his "civil rights." *Id.* ¶¶ 34, 57.

Neither Dr. Levy nor MGH responded to the ADA and related discrimination allegations,

in particular the allegations regarding Hansen's allegations regarding his apparent inability to

bring his service dog with him for treatments. That failure, however, is due in part to the

somewhat unclear nature of the allegations in the TAC and its reference to this claim as

"discrimination" instead of a violation of the ADA. The defendants whose actions are implicated

by Hansen's ADA/civil rights claim related to his service dog – namely Dr. Levy and MGH – will

be given another attempt to respond to this claim now that it has been more clearly identified.

---

[8] The alleged fact that defendants "make more money" by providing dialysis rather than securing transplants for patients cannot, on its face and standing alone, support a discrimination or civil rights claim. TAC ¶¶ 54, 56.

### 3. Dr. Estilo, Marin Nephrology, Satellite Dialysis, Anthem, Sutter, Swedish and CMS

As discussed above Hansen has not, despite being expressly advised to do so, alleged any facts suggesting that he was discriminated against based on a protected classification by any defendant. His remaining and now-clarified ADA/civil rights violation claims is related to his medical care at MGH and treatment of his service dog and is properly asserted only against MGH and by extension Dr. Levy through his work and "control" of dialysis at MGH.

Hansen's "discrimination" or ADA/civil rights claim, therefore, is DISMISSED WITH PREJUDICE against Dr. Estilo, Marin Nephrology, Satellite, Anthem, Sutter, Swedish, and CMS.

Because MGH and Dr. Levy have not had the opportunity to move to dismiss the ADA/civil rights claim related to Hansen's assertions that he was denied treatment with his service dog or retaliated against and harassed because of his service dog, they may separately challenge and move to dismiss this claim as discussed below.

### C. Breach of Contract

As explained in my December Order, in order to plead a breach of contract, a plaintiff must allege: (1) the existence of a contract; (2) plaintiff's performance or excused non-performance; (3) defendant's breach; and (4) resulting harm to plaintiff. *Acoustics, Inc. v. Terpe Construction Co.*, 14 Cal. App. 3d 887, 913 (1971). I explained to Hansen that in order to state his claim for breach of contract, he needed "to allege the contract that each defendant had with him and how he, she or it breached it." December Order at 6. Presumably in response to this, Hansen adds an allegation that he "entered into wri[t]ten agreements that change yearly due to their requirements." TAC ¶ 60. He does not identify which defendants he entered into these yearly contracts with, although he explains that their breaches "have cost me a kidney transplan[t], good health, and millions in lost wages, and pain and suffering to be proven." *Id*. He explains that "all" were "contracted to work together" to help him get a kidney while getting "quality health care" and they all fell short, and Hansen seeks a kidney as a form of relief. *Id*., ¶¶ 61-62.

As to allegations regarding the kidney transplant, there are none showing that Swedish was bound by written contract to provide Hansen a kidney, and the exhibits Hansen includes in his TAC show that there was no written agreement to provide him a kidney. *See, e.g*., TAC and

1  exhibits at ECF pgs. 96, 101.  This claim cannot proceed against Swedish.

2      More generally, Hansen has not alleged the existence of specific written contracts that

3  would make any other defendant liable for failure to get him a kidney transplant.  No facts in any

4  of his complaints plausibly suggest that such a contract existed.

5      Nor are there are plausible allegations that either Dr. Levy and Dr. Estilo entered into a

6  written contract with Hansen to provide him a kidney or a contract to provide medical services,

7  much less how those particular contracts were breached.  There is no allegation or plausible

8  inference that Satellite, Marin Nephrology, or MGH entered into a contract with Hansen (as

9  opposed to a contract with Hansen's insurance providers or Medicare) to provide him a kidney or

10  medical services, much less how the specific contracts were breached.

11      Hansen does allege that he had secured insurance coverage through Sutter and Anthem.

12  The existence of written contracts governing the provision of insurance benefits by those

13  defendants to plaintiff are, therefore, plausibly suggested.  But Hansen's theory of how Sutter or

14  Anthem breached those plausible insurance contracts is not clear.  If his theory is that they failed

15  to provide him a kidney, that theory is simply not plausible.  If his theory is that they failed to

16  provide adequate access to health care under their insurance contracts, that, plausibly, might

17  support a breach of contract claim.

18      Swedish and CMS are dismissed from this claim WITH PREJUDICE, [9] and the breach of

19  contract claim is DISMISSED WITH LEAVE TO AMEND regarding the other parties.

20  Hansen is given **one more chance** to identify the specific written contracts that he alleges have

21  been breached with the following defendants: Dr. Levy, Dr. Estilo, Marin Nephrology, Satellite,

22  Anthem and Sutter.  Hansen must identify each contract with each defendant by name or subject

23  matter, and then explain his theory as to why each defendant breached each identified contract.

24      **D.      Monopoly**

25      In the December Order, I noted that it was unclear what type of monopoly claim and under

26

27  ───────────────────
[9] In his TAC, Hansen realleges his breach of contract claim against CMS.  This cause of action
28  was dismissed with prejudice in the December Order.

what antitrust law Hansen was attempting to bring. December Order at 6. In the TAC, Hansen states that he is bringing his monopoly claim pursuant to section 4 of the Clayton Act as well as sections 1 and 2 of the Sherman Act. TAC ¶ 71. Even though Hansen has identified these particular laws, his claims are still deficient.

To state a claim under both section 1 (monopolization) and section 2 (attempted monopolization) of the Sherman Act as well as section 4 of the Clayton Act, a plaintiff must allege an antitrust injury. *See Rebel Oil Co. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995) ("causal antitrust injury, is an element of all antitrust suits brought by private parties seeking damages under Section 4 of the Clayton Act"); *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 811 (9th Cir.1988) (noting that both sections 1 and 2 of the Sherman Act requires allegation of antitrust injury).[10] For purposes of establishing "a causal antitrust injury," a plaintiff must demonstrate unlawful conduct that causes injury to the plaintiff and that the injury is the type of injury the law was intended to prevent and is the very reason the conduct is unlawful. *Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013). "The alleged violation must cause injury to competition beyond the impact on the claimant under section 1, and must destroy competition and cause antitrust injury under section 2." *McGlinchy*, 845 F.2d at 811.

Hansen fails to demonstrate how his alleged injuries—loss of a kidney, loss of income, and a longer and healthier life— are antitrust injuries. Nothing in the facts alleged show that Hansen's alleged injury flows from any anti-competitive behavior that restrained competition in the dialysis market in Marin County or more broadly (or sought to restrain competition). Nor does he allege any facts showing an injury from the alleged agreement to restrict his dialysis treatment impacted anyone other than himself, as required to bring a monopoly claim. Given this, Hansen has not

---

[10] In general: "To establish a section 1 violation under the Sherman Act, a plaintiff must demonstrate three elements: (1) an agreement, conspiracy, or combination among two or more persons or distinct business entities; (2) which is intended to harm or unreasonably restrain competition; and (3) which actually causes injury to competition, beyond the impact on the claimant, within a field of commerce in which the claimant is engaged (i.e., 'antitrust injury')." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 811 (9th Cir. 1988). "To establish a section 2 violation for an attempt to monopolize, a plaintiff must demonstrate four elements: (1) specific intent to control prices or destroy competition; (2) predatory or anti-competitive conduct directed toward accomplishing that purpose; (3) a dangerous probability of success; and (4) causal antitrust injury." *Id.*

1  alleged a monopoly or attempted monopoly claim and cannot amend to plausibly do so.  This

2  claim is DISMISSED WITH PREJUDICE.[11]

3      **E.    California's Unfair Competition Law**

4      Although Hansen's UCL claim is his first cause of action, I address it last because he must

5  allege an unlawful, unfair, or fraudulent business act or practice.  *Lippitt v. Raymond James Fin.*

6  *Servs., Inc.*, 340 F.3d 1033, 1043 (9th Cir.2003).  Unlawful, unfair, and fraudulent are three

7  separate prongs of the UCL. *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163,

8  180 (1999). "Unlawful" practices are any practices forbidden by law.  *People v. McKale*, 25

9  Cal.3d 626, 632 (1979). "Unfair" simply means any practice whose harm to the victim outweighs

10  its benefits.  *Motors, Inc. v. Times Mirror Co*. 102 Cal. App. 3d 735, 740 (1980). "Fraudulent," as

11  used in the statute, does not refer to the common law tort of fraud but only requires a showing

12  members of the public "are likely to be deceived."  *Bank of the West v. Superior Court*, 2 Cal. 4th

13  1254, 1267 (1992).

14      As discussed, other than the medical malpractice claim against Dr. Levy, Dr. Estilo, and

15  MGH, none of Hansen's other claims have been adequately alleged.[12]  I am granting limited leave

16  to amend with respect to the malpractice claim (against Marin Nephrology and Satellite), as well

17  as the breach of contract claim (against Dr. Levy, Dr. Estilo, Marin Nephrology, Satellite, Anthem

18  and Sutter).  Accordingly, I will address whether Hansen has alleged enough to state a UCL claim

19  against those defendants when considering his Fourth Amended Complaint.

20      All claims against Swedish have been dismissed with prejudice.  There are no separate or

21  additional facts alleged against Swedish which could support a UCL claim against it.  The UCL

---

23  [11] I also note that Hansen fails to allege facts to plausibly support that defendants had an
24  agreement to monopolize the dialysis market (or kidney transplant market) in Marin County or
   more broadly.  Other than the specific allegations that he was blackballed by Dr. Levy from
25  receiving dialysis (which cannot support antitrust injury and are contradicted by Hansen's own
   allegations that others can receive dialysis at Kaiser facilities, TAC ¶ 69) his other allegations (that
26  defendants conspired to require more expensive dialysis instead of transplants for patients) are far
   too general to plausibly support this claim.

27  [12] As noted, I am not deciding at this time whether Hansen has adequately alleged or can allege his
28  ADA/civil rights claim against Dr. Levy or MGH, and instead allowing those defendants to
   challenge that claim in a further motion to dismiss.

1 claim is likewise DISMISSED WITH PREJUDICE as to Swedish.[13]

2 **III.    MOTION FOR IN HOME DIALYSIS**

3 Finally, Hansen's motion for in home dialysis is DENIED.  In his motion, Hansen

4 identifies no authority establishing his right to in home dialysis.  However, I will treat Hansen's

5 motion as a request for specific relief related to his surviving claims (for now, medical

6 malpractice, ADA/civil rights, breach of contract, and UCL).  I am not determining at this juncture

7 whether that form of relief would be appropriate for any of the currently remaining causes of

8 action.

9 **CONCLUSION**

10 For the reasons discussed above, Hansen's motion for entry of default judgment against

11 Satellite is DENIED.  Satellite's motion to dismiss for failure to personally serve process in this

12 case is GRANTED.  However, Hansen is given 60 days from the date of this Order to personally

13 serve Satellite Dialysis with a summons and a copy of the most current complaint.

14 Defendants' motions to dismiss are GRANTED in part and DENIED in part.

15 All of the claims against CMS and Swedish are GRANTED WITH PREJUDICE.  Those

16 defendants are no longer in this case.

17 The medical malpractice claims against Swedish, Sutter, Anthem, and CMS are

18 DISMISSED WITH PREJUDICE.  The malpractice claims against Satellite and Marin

19 Nephrology are DISMISSED WITH LEAVE TO AMEND.  The malpractice claims arising on or

20 after April 4, 2016 against Dr. Levy, Dr. Estilo, and MGH may proceed.

21 The ADA/discrimination claim is DISMISSED WITH PREJUDICE as to Dr. Estilo, Marin

22 Nephrology, Satellite, Anthem, Sutter, Swedish, and CMS.  Hansen's ADA/discrimination claim

23 against Dr. Levy and MGH, as clarified, is allowed to proceed but those defendants may move to

24 dismiss that claim after Hansen files his Fourth Amended Complaint, or if Hansen does not choose

25 to file a Fourth Amended Complaint, within forty (40) days of the date of this Order.

26 The breach of contract claim is DISMISSED WITH LEAVE TO AMEND as to Dr. Levy,

27

28 ---
[13] The UCL claim against CMS was dismissed with prejudice in the December Order.

21

Dr. Estilo, Marin Nephrology, Satellite, Anthem and Sutter.   It is DISMISSED WITH PREJUDICE as to Swedish.

The monopoly claim is DISMISSED WITH PREJUDICE as to all defendants.

The UCL claim is DISMISSED WITH PREJUDICE as to Swedish, but DISMISSED WITH LEAVE TO AMEND against Dr. Levy, Dr. Estilo, Marin Nephrology, Satellite, Anthem and Sutter.

If Hansen wishes to attempt to amend as allowed, his Fourth Amended Complaint must be filed within twenty one (21) days of the date of this Order.

**IT IS SO ORDERED.**

Dated: September 24, 2018

William H. Orrick
United States District Judge