UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GREGG HANSEN,

        Plaintiff,

   v.

MARIN GENERAL HOSPITAL, et al.,

        Defendants.

Case No. 17-cv-03473-WHO

**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS**

Re: Dkt. Nos. 145, 146, 147, 148, 149, 152, 162.

Pursuant to my September 2018 Order granting in part and denying in part motions to dismiss claims brought by Gregg Hansen against defendants Dr. Lawrence Levy, Dr. Genevieve Estilo, Marin Nephrology, Marin General Hospital ("MGH"), Anthem Blue Cross Life and Health Insurance Co. ("Anthem"), Sutter Health ("Sutter"), Satellite Dialysis ("Satellite"), Centers for Medicare and Medicaid Services ("CMS"), and Swedish Medical Center ("Swedish"), Hansen filed his Fourth Amended Complaint ("4AC") on October 24, 2018.[1]

In the September 2018 Order, I dismissed a number of claims and defendants with prejudice, but granted Hansen one final attempt to amend in order to state facts supporting his claims against specific defendants.[2] The remaining defendants again move to dismiss, arguing

---

[1] A number of defendants note that Hansen did not timely file his 4AC and argue it should be dismissed on that ground alone. *See, e.g.*, Satellite Motion to Dismiss (Dkt. No. 147) at 9-11. However, I will consider the 4AC on its merits. On March 4, 2019 Hansen also filed a "motion for a trial," asking to have his case tried. Dkt. No. 162. That motion is DENIED. This case will proceed on the remaining, narrowed claims.

[2] Hansen's monopoly claim, as well as all claims asserted against Swedish and CMS were dismissed with prejudice. September 2018 Order (Dkt. No. 135) at 2. With respect to his claims for medical malpractice and breach of contract, in light of Hansen's admitted knowledge of those claims and the underlying statutes of limitations, Hansen's active claims were limited to relief for acts that occurred on or after April 4, 2016, and his claims stemming from defendants' failure to provide or alleged interference with his kidney transplant were dismissed with prejudice. *Id.* at 1.

that Hansen still fails to identify actionable instances of medical malpractice, fails to identify contracts that were breached, fails to show how specific defendants violated the Americans with Disabilities Act ("ADA"), and fails to provide facts showing that defendants engaged in unfair business practices that injured him.

As explained below, some of Hansen's claims against specific defendants must be dismissed. As he has been provided many chances to provide the missing factual allegations, deficient claims and certain defendants are DISMISSED from this case WITH PREJUDICE. However, certain of his claims for medical malpractice against Levy, Estilo, Marin Nephrology, and MGH may proceed, as well as the ADA and breach of contract claims against MGH. This case moves forward only on those claims.[3]

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of

---

[3] The general factual background alleged by Hansen in his Fourth Amended Complaint is not significantly altered from the facts discussed in the September 2018 motion and will not be repeated here. I will address any new facts alleged with respect to specific defendants in the appropriate sections below.

fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Pro se pleadings must be held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Nevertheless, a complaint, or portion thereof, should be dismissed if it fails to set forth "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 554. "[A] district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quotations omitted).

**DISCUSSION**

**I.    ANTHEM**

In his 4AC, Hansen realleges that Anthem is liable for breach of contract and for unfair business practices under California Business & Professions Code 17200 ("section 17200"). 4AC ¶¶ 63-65).[4] In the September 2018 Order, I dismissed the breach of contract claim against Anthem because while the "existence of written contracts governing the provision of insurance benefits by" Anthem was plausibly alleged, Hansen failed to explain *how* Anthem breached its contract with Hansen. September 2018 Order at 18. In his 4AC, Hansen still does not allege how Anthem breached specific provisions of a specific contract he had with Anthem. He generally alleges that Anthem charged him PPO rates but did not provide him access to unidentified "PPO programs," and that Anthem was required to find him a nephrologist when Levy terminated him. 4AC ¶¶ 63-65, 108. Hansen also alleges that Anthem's conduct "cost him a kidney" (apparently referencing the failure of former defendant Swedish Medical Center to provide him a transplant) costing him money and his good health. *Id*. ¶¶ 106-107.

Hansen has not provided the details that were missing from his prior complaints to state a claim for breach of contract against Anthem. With respect to the referrals issue, in dismissing

---

[4] In the September 2018 Order, I dismissed with prejudice the medical malpractice claims against Anthem and Sutter because Hansen did not identify any Anthem or Sutter employee who provided him deficient medical treatment or medical advice. September 2018 Order at 14.

with prejudice the medical malpractice claim against Anthem, I noted that Hansen's assertions about lack of referrals was undermined by his explicit allegation in his TAC that "Anthem did, in fact, provide him with a list of 80 referrals. TAC ¶ 80." September 2018 Order at 14. Hansen cannot state a claim with respect to any alleged failure of Anthem to provide him with a list of referrals.

As to Anthem's alleged breach of a contract for failing to get Hansen a kidney, in addition to failing to allege facts showing that a *specific* contract with Anthem provided him a right to a transplant, as noted in my prior Order, that allegation is simply implausible. September 2018 Order at 18. In addition, all of the specific facts in his 4AC and prior complaints focused – with respect to the transplant – on actions of Levy and Swedish, and there was no mention of specific acts taken or not taken by Anthem with respect to the transplant. Finally, as noted in my prior Order, Hansen's claims with respect to the transplant were barred by the applicable statute of limitations. September 2018 Order at 14, 17-18.

As to allegations that Anthem charged Hansen PPO rates but did not provide access to PPO programs, Hansen identifies no specific contract, much less specific contractual terms, that outline the PPO programs he was entitled to but allegedly denied. There are no facts alleged to show that this claim is plausible.

Despite being provided multiple opportunities to allege facts identifying the contracts at issue and what specific services under those contracts were not provided, Hansen has not done so. The breach of contract claim against Anthem is DISMISSED WITH PREJUDICE.

With respect to his Section 17200 unfair business practices claim, Hansen alleges that Anthem is engaged in unfair business practices because Anthem charged him PPO rates but did not provide him PPO services and did not refer him to or find him a new nephrologist. 4AC ¶¶ 63-65.[5] However, as with the breach of contract claim, the lack of facts showing that Anthem breached specific portions of identified contracts as well as Hansen's own admitted facts that

---

[5] He also alleges in passing that Anthem has to enroll "1100 healthy patients to pay for 1 dialysis patient." 4AC ¶ 23. Even taking that allegation as true, Hansen does not connect that alleged fact to any denial of contracted services by Anthem.

4

Anthem provided him with a list of referrals means he has not stated facts that support a claim that Anthem was engaged in unfair business practices in violation of section 17200.[6]

Having had multiple opportunities to state this claim and having failed to do so, Hansen's Section 17200 claim against Anthem is DISMISSED WITH PREJUDICE.  Anthem is DISMISSED from this case WITH PREJUDICE.

## II.      SUTTER HEALTH

In his 4AC, Hansen alleges that Sutter is liable for breach of contract and for unfair business practices under section 17200. 4AC ¶¶ 60-62, 116-120.[7]  As to breach of contract, in my September 2018 Order I directed Hansen to "identify" the contract with Sutter that he claims was breached and "then explain his theory as to why [Sutter] breached [the] identified contract." September 2018 Order at 18.

As with Anthem above, Hansen does not identify any specific contract he had with Sutter. Instead, he complains that Sutter's "breaches have cost me a kidney transplant, good health, and millions in lost wages, pain and suffering." 4AC ¶ 116.  He more specifically alleges that Sutter's "main breach was not referring me to a nephrologist" and also complains that Sutter charged him for referrals but did not refer him to a nephrologist.  *Id*. ¶¶ 116, 120.  However, in addition to failing to allege the existence of a specific contract that required Sutter to do either of those things, Hansen also fails to allege facts supporting these allegations.  For example, he doesn't identify how Sutter charged for referrals (and that he paid those charges) or whom at Sutter he asked for referrals and *when* he made those requests.  Given the repeated chances allowed for Hansen to state this claim, and his continued failure to allege facts much less plausible facts showing a

---

[6] As noted in the September 2018 Order, unlawful, unfair, and fraudulent are three separate prongs of the UCL. *Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co*., 20 Cal. 4th 163, 180 (1999). "Unlawful" practices are any practices forbidden by law. *People v. McKale*, 25 Cal.3d 626, 632 (1979). "Unfair" means any practice whose harm to the victim outweighs its benefits. *Motors, Inc. v. Times Mirror Co*. 102 Cal. App. 3d 735, 740 (1980) or which threatens an incipient violation of law.  *Cel-Tech*, 20 Cal.4th at 180.  "Fraudulent," as used in the statute, does not refer to the common law tort of fraud but only requires a showing members of the public "are likely to be deceived." *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

[7] Hansen also realleged his claim for malpractice against Sutter, 4AC ¶¶ 84-85, but that claim was dismissed with prejudice in the September 2018 Order.

breach of a specific contract, Hansen's breach of contract claim against Sutter is DISMISSED WITH PREJUDICE.

As to the section 17200 claim, Hansen alleges that his former primary care physician failed to give him a referral to any nephrologist other than Levy and then failed to secure a new nephrologist after Levy terminated their relationship. 4AC ¶¶ 60-62. In light of the failure to allege facts that could plausibly state a breach of contract claim against Sutter on this same theory, his section 17200 claim likewise fails.

Having had multiple opportunities to state this claim and having failed to do so, Hansen's section 17200 claim is DISMISSED WITH PREJUDICE against Sutter. Sutter is DISMISSED WITH PREJUDICE from this case.

## III.   SATELLITE DIALYSIS

In his 4AC, Hansen asserts the following causes of action against Satellite: violation of section 17200 (4AC ¶¶ 54-59), malpractice (*id*. ¶¶ 78-83), and breach of contract (*id*. ¶¶ 111-115).

### A.   Medical Malpractice

In the September 2018 Order, I explained that it was unclear whether Hansen's claims for medical malpractice against Satellite were barred by the statute of limitations (precluding claims of malpractice based on treatment occurring before April 4, 2016). September 2018 Order at 13. Therefore, I explained that to state an actionable malpractice claim, Hansen needed "to allege specific facts about Satellite's acts on or after April 4, 2016 in order to maintain a medical malpractice claims against Satellite." *Id*. Specifically, Hansen was required to plead facts showing that "a medical practitioner employed by Satellite [] provided him deficient treatment on or after April 4, 2016." *Id*. at 15.

In his 4AC, as to Satellite he alleges that he "met" with unspecified people at Satellite on July 5, 2016," and "Briana gave my attorney a list of doctors that would take me. No one on the list would take me." 4AC ¶ 22. He then alleges that on "7/10/16 I contacted Briana at Satellite Dialysis for help finding a doctor, and she said they could not help." *Id*. ¶¶ 56, 80. However, assuming that Satellite can be considered a medical provider who owed a duty to Hansen and assuming that a claim for failure to provide referrals could state a claim for malpractice, Hansen's

6

claim still fails.  His own evidence is that on May 6, 2016, Satellite explained to him that he needed to find a new primary nephrologist by July 2016, and Satellite provided him with a list of nephrologists who had privileges at Satellite.  4AC ¶ 22; *see also* Dkt. No. 142 at ECF pg. 79. That none of the doctors took Hansen as a client, without specific plausible facts implicating Satellite in those denials, cannot be used to state a medical malpractice claim against Satellite.[8]

In his 4AC, Hansen does allege that he received poor medical treatment at Satellite, but contrary to my directions he does not provide the dates or timeframe for those deficient treatments. *See* 4AC ¶ 54 ("because of understaffing many documented emails to Ms. Hall at Satellite Dialysis on the problems I was having were lost.  Because of this I have missed treatments and received poor dialysis."), ¶ 78 (same); *see also*  ¶¶ 58, 82 ("Satellite Dialysis would use the same blood filters 32 times while washing them each time, instead of replacing them, which is the standard of care. This spread disease.  After I complained about this practice, they stopped. And then they retaliated against me.").  In the exhibits Hansen references in paragraph 78 of his 4AC, there is evidence that on April 17, 2016 Hansen sent Stephanie Hull at Satellite an email objecting to further treatment by a temporary travelling nurse because that nurse expressed anger at Hansen and he felt that she was "endangering" his life.  Dkt. No. 142 ECF Pg. No. 71 of 99.  However, there are no facts alleged in the 4AC or in that email that as a result of this service (or any other medical service provided by a Satellite employee on or after April 4, 2016), Hansen suffered any specific or identifiable injury much less loss or damage resulting from those services.[9]

Because Hansen fails to identify any negligent treatment that could plausibly state a claim for medical malpractice by medical providers at Satellite on or after April 4, 2016 – despite being given multiple opportunities to do so – the medical malpractice claim against Satellite is

---

[8] The general proposition is that a physician may terminate a relationship with a client after "due notice, and an ample opportunity afforded to secure the presence of other medical attendance." *Payton v. Weaver*, 131 Cal. App. 3d 38, 45 (Cal. App. 1st Dist. 1982) (internal quotation omitted).

[9] To state a claim for medical malpractice, plaintiff must allege: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." *Jackson v. Johnson*, 5 Cal. App. 4th 1350, 1355 (1992).

DISMISSED WITH PREJUDICE.

###   B.    Breach of Contract

In dismissing his prior breach of contract claim against Satellite, I explained that Hansen would be "given one more chance to identify the specific written contracts that he alleges have been breached" and that he must "identify each contract with each defendant by name or subject matter, and then explain his theory as to why each defendant breached each identified contract." September 2018 Order at 18.[10] In his 4AC, Hansen asserts he "entered into written agreement with them in 1/2013 for Dialysis services; Their [sic] had a duty to give me quality dialysis and did not." 4AC ¶ 111. As evidence of Satellite's failure to give him adequate treatment, he references Exhibits 1-5 of his 4AC. Those exhibits are emails where he complains in April 2016 that he was mistreated by a travelling nurse who was angry at him, that he was harassed by management at Satellite during an unspecified timeframe, that he was mistreated by Levy at an unspecified time, and an undated complaint where he complains that Satellite refused to provide him treatment. Dkt. No. 142 ECF pgs.71-76 of 99.[11]

While he vaguely alleged the existence of a contract entered into in January 2013, Hansen still has not adequately alleged the breach of specific contractual guarantees and a specific injury flowing from any alleged breach by Satellite. Even if we assume that Hansen signed a contract with Satellite in 2013 that required Satellite to provide him with "quality" dialysis, as noted above with respect to medical malpractice, Hansen has not alleged facts showing that any recent specific treatment fell below that required level of service and injured him.

Having failed to identify specific provision of a contract he entered into with Satellite, much less facts showing how those provisions were violated and how he sustained an injury as a result, the breach of contact claim as to Satellite is DISMISSED WITH PREJUDICE.

---

[10] In order to plead a breach of contract, a plaintiff must allege: (1) the existence of a contract; (2) plaintiff's performance or excused non-performance; (3) defendant's breach; and (4) resulting harm to plaintiff. *Acoustics, Inc. v. Terpte Construction Co.*, 14 Cal. App. 3d 887, 913 (1971).

[11] Hansen also refers to Satellite's duty to help him get a new kidney. 4AC ¶¶ 112-113. However, contract-based claims related to securing a kidney through Swedish have been dismissed with prejudice as implausible. September 2018 Order at 18.

### C. Unfair Business Practices

As to the final cause of action against Satellite, unfair business practices under section 17200, Hansen generally complains of missed and inadequate treatments, the failure of Satellite to help him get a kidney through Swedish, and Satellite's duty to help him get a new provider after his relationship with Levy was terminated. 4AC ¶¶ 54-59. However, the claims regarding the Swedish kidney transplant have been dismissed, and Hansen's own documents attached to the 4AC show that Satellite provided him with the names of doctors who might be able to provide him treatment at Satellite after the termination of his relationship with Levy. The claims with respect to deficient treatments have likewise been dismissed.

As a result, Hansen has not alleged any unfair, illegal, or fraudulent conduct by Satellite in violation of Section 17200 and that claim is DISMISSED WITH PREJDUICE. Satellite Dialysis is DISMISSED from this case WITH PREJUDICE.

## IV. MARIN NEPHROLOGY

In the September 2018 Order I explained that while Marin Nephrology was named as a defendant in every cause of action in Hansen's TAC, Hansen alleged no facts about Marin Nephrology and that if he wanted "to proceed with claims against Marin Nephrology, he must identify facts explaining who Marin Nephrology is and what the entity or its employees did to him to make it liable for his claims." September 2018 Order at 14; *see also id.* at 15 (Hansen must "allege facts that a medical practitioner employed by [] Marin Nephrology provided him deficient treatment on or after April 4, 2016.").

In his 4AC, Hansen alleges that Levy works for Marin Nephrology and that Marin Nephrology (along with Levy and Estilo) "steer" their patients to their doctors and dialysis centers, 4AC ¶ 41; that he was "terminated" by both Levy and Marin Nephrology (the May 6, 2016 termination letter from Levy was written on Marin Nephrology letterhead), *id.* ¶ 43; that Estilo also works for Marin Nephrology, *id.* ¶ 46; that Marin Nephrology has denied him "medical emergency Dialysis for over 2 years at Marin General Hospital," *id.* ¶ 70; that from 7/5/2016 to present Marin Nephrology (along with Levy) breached their duty and refused to treat Hansen, forcing him to get dialysis on an emergency basis only but also turning him away from Marin

General and refusing to provide treatment, *id*. ¶¶ 71-72; that Estilo and Marin Nephrology "have denied [him] medical emergency Dialysis for over 2 years at Marin General Hospital," *id*. ¶¶ 74, 86;[12] but also by forcing him to get emergency dialysis at MGH Marin Nephrology has breached its duty to Hansen, *id*. ¶ 75; that Marin Nephrology is responsible for Hansen's service dog being turned away at MGH, *id*. ¶ 90; and that Marin Nephrology breached a contract he entered into with it and MGH. *Id*. ¶¶ 96, 101, 106, 111 (citing Exhibit 23).

In moving to dismiss the 4AC, counsel for Marin Nephrology admit that Marin Nephrology is the "professional corporation" of Levy and Estilo. *See* Estilo and Marin Nephrology Motion to Dismiss (Dkt. No. 149) at 2; *see also* Levy Motion to Dismiss (Dkt. No. 148) 1-2 (characterizing Marin Nephrology as Levy and Estilo's "professional corporation"); Dkt. No. 142 ECF pg. 77 of 99. It does not separately address how and whether a professional corporation can be liable for the torts or breaches of contract of its members. Therefore, any potential liability to Marin Nephrology, absent case law to the contrary, hinges on whether Hansen has adequately alleged claims against its members Levy and Estilo.

## V.   DR. LEVY

### A.   Medical Malpractice

In the September 2018 Order, I concluded that Hansen had adequately alleged incidents of medical malpractice against Levy occurring on or after April 4, 2016. September 2018 Order at 12. However, because Levy did not have full notice of those claims (which I found could be stated by reviewing exhibits to Hansen's TAC complaints) and on Levy's motion for reconsideration, I agreed that Levy could move to dismiss any medical malpractice claims asserted against him in the 4AC. October 2018 Order (Dkt. No. 138).

In his 4AC, Hansen alleges that Levy (and Marin Nephrology, collectively) committed medical malpractice by (1) turning him away, terminating their relationship, and blackballing him so he was forced to receive dialysis on an emergency basis which harms his health and life, and (2) denying him emergency dialysis at MGH over the past two years. 4AC ¶¶ 70-72. With

---

[12] Estilo appears on the letterhead of Marin Nephrology with Levy. 4AC, Ex. 7 at Dkt. No. 142 ECF pg. 77 of 99.

respect to the termination of the relationship, as noted above, under California law a physician may terminate a relationship with a patient with sufficient advance notice and "ample opportunity" to secure other medical providers. *Payton v. Weaver*, 131 Cal. App. 3d at 45.[13] Here, Hansen's own evidence shows that Levy gave Hansen over 60 days of notice and a list of other providers. Dkt. No. 142 ECF pgs. 77-7 of 99. That is sufficient.[14]

With respect to the blackballing, Hansen's own exhibits demonstrate that Levy and Satellite and Anthem provided Hansen with information about other doctors, and in 2017 Estilo found a doctor willing to treat Hansen at Satellite Dialysis. Dkt. No. 142 ECF pg. 49 of 99. That none of these leads apparently worked out for Hansen does not make Levy liable. Despite having multiple opportunities to plead specific facts, much less plausible facts, to support his assertion of blackballing, Hansen has failed to do so.

As to the denial of emergency dialysis at MGH, I found on the TAC that Hansen had adequately alleged malpractice with respect to the denials of treatment at MGH as to Levy. Hansen had alleged that Levy had a direct role in those decisions given Levy's authority at MGH, and Hansen had adequately identified instances where he was turned away or given inadequate medical attention. September 2018 Order at 11-12 (citing Third Amended Complaint ¶¶ 21, 28-30). Those allegations are largely repeated in the 4AC. For example, Hansen claims that in one instance "4/16/2017, I was turned away for two days and on 9/14.2017 turned away for 4 days. When I came back to the emergency room on 4/16 with a potassium [sic] level of 9, my situation had deteriorated so much I couldn't move my limbs. The nurse claimed I was faking my condition. She walked away and told me when I was ready to cooperate I could walk over and get

---

[13] Hansen's exhibits show that there was breakdown in the physician/patent relationship as Hansen sought a restraining order against Levy prior to the termination of their doctor-patient relationship. Dkt. No. 142 at ECF pg. 38, 63, 73 of 99.

[14] Levy asks me to take judicial notice of the Medical Board of California's guidelines for terminating doctor patient relationships and find that Levy properly terminated his relationship with Hansen because he provided Hansen more time and more notice to find a new nephrologist than recommended by the Medical Board. Request for Judicial Notice (Dkt. No. 150), Ex. 5. Judicial notice is not necessary as Hansen does not argue that he did not receive ample notice or dispute that he was given a list of other doctors. His central claim is the unsupported one that Levy blackballed him with other doctors and thereby prevented him from securing non-emergency dialysis.

her. I had to call 911 from emergency and paramedics vame [sic] and put me in a gurney. Tests confirmed the 9 plus potassium level, see attachment H12. . . This has caused me irreversible heart damage that will likely shorten my life." 4AC ¶¶ 28-30.

In Levy's motion to dismiss the 4AC, Levy contends that evidence cited in and attached to Hansen's 4AC demonstrates that Hansen was not denied appropriate emergency medical treatment at MGH. Levy notes that Hansen admits the criteria for admission at MGH for emergency dialysis is when a patient has a potassium level of 7 or over. 4AC ¶ 28. Levy contends that Hansen's own exhibits demonstrate that when Hansen had a potassium level of 7 or over, he was admitted to MGH and when Hansen was turned away at MGH, it was because his potassium level was beneath a 7. Levy MTD at 7-8. Reviewing the exhibits to the 4AC, Levy's point is well-taken for some of the alleged incidents, but there are not judicially noticeable facts in the exhibits that foreclose every alleged instance of malpractice. For example, in the 4AC Hansen alleges that he was improperly turned away in April 2017 and September 2017, but there are no judicially noticeable facts pointed to by Levy showing what Hansen's potassium levels were at the time of Hansen's initial visits on those dates.[15]

Unlike some of Hansen's other claims – that are rebutted by contradictory evidence and admissions from Hansen's own evidence or are implausible—the allegations that Hansen was turned away from emergency dialysis at MGH by Levy on specific occasions when he needed it are plausible. Requiring Hansen to amend – once again – to include allegations that his potassium levels were at 7 or above each time he was denied treatment as Levy asks would not be productive and would simply result in more delay to the ultimate resolution of this case.

Hansen's claims that Levy committed malpractice by refusing to authorize or impermissibly delaying his emergency dialysis treatment at MGH may proceed and Levy's motion

---

[15] I recognize that Hansen may be complaining that he was denied emergency dialysis when he felt he needed it, even where his potassium levels were below 7, or that he is attempting to assert malpractice claims based on the length of time he had to wait to receive the dialysis on an emergency basis even after being admitted to MGH. *See, e.g.*, 4AC at ECF pg. 65 of 99. That claim may indeed fail on summary judgment. However, what the emergency dialysis and treatment guidelines are and how they apply in different situations is best determined on a fuller evidentiary record rather than on the bases of Hansen's allegations and potential admissions.

to dismiss these discrete claims is DENIED.

### B. Americans with Disabilities Act (ADA) Violations

Because the scope of Hansen's ADA claim was unclear in the TAC, Levy was allowed (as was MGH) to move to dismiss this claim based on allegations that Levy violated the ADA with respect to Hansen's service dog. September 2018 Order at 16, 17.[16] In the 4AC, Hansen alleges that Levy (along with Estilo, Marin Nephrology, and MGH collectively) violated his rights under the ADA by forcing his service dog to stay in the car while Hansen was at MGH and otherwise denying Hansen services when he had his service dog with him and harassing him and his service dog when he sought treatment at MGH. 4AC ¶¶ 90-93, 95. He also alleges that Levy (along with Satellite) "discriminated" against him by keeping him in for-profit dialysis centers, presumably when Levy allegedly prevented him from receiving a kidney transplant through Swedish. *Id.* ¶ 94. With respect to the claims regarding Levy's role in denying him the kidney transplant in order to steer him to for-profit dialysis centers, those allegations have been dismissed as implausible and time-barred. But, even if plausible, they do not state a "discrimination" claim under the ADA.

With respect to the treatment of Hansen's dog and denial of access to MGH with his dog, those are the types of allegations that fall under the protections of the ADA. However, there are no facts alleged that Levy personally (as opposed to security guards or others at MGH) denied Hansen that access to MGH with his dog or facts to plausibly suggest that Levy directed others to retaliate against Hansen or his service dog in violation of the ADA. Similarly, there are no facts to plausibly show that Levy was responsible for setting policy with respect to service dogs at MGH. *See, e.g., Aikins v. St. Helena Hosp.*, 843 F.Supp. 1329, 1335 (N.D.Cal.1994) (dismissing ADA claim against an individual who, although worked at a hospital, had no "authority to enact or amend hospital policy" and thus was not "in a position to ensure nondiscrimination"). The

---

[16] In general, the relevant provision of the Americans with Disabilities Act provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Public hospitals are covered public accommodations under the ADA. *See, e.g., Hernandez v. County of Monterey*, 70 F. Supp. 3d 963, 972 (N.D. Cal. 2014). Regulations under the ADA govern access to public accommodations with "service animals." *See, e.g.,* 28 C.F.R. § 36.104.

continued lack of facts connecting Levy directly to MGH's alleged refusal of entry and/or treatment of Hansen with his dog and the alleged harassment of Hansen or his dog when they sought treatment at MGH means that the ADA claim cannot be asserted against Levy. The ADA claim against Levy is DISMISSED WITH PREJUDICE.

### C.  Breach of Contract

Hansen asserts a breach of contract claim collectively against Levy, Estilo, and Marin Nephrology, arguing that he entered into unspecified written agreements with "them" each year and their breaches have cost him a kidney transplant, good health, and millions in lost wages. In addition to the allegations regarding the kidney transplant (which, as noted, were dismissed in my September 2018 order as implausible), he alleges that "they" retaliated against him and his service dog when he received emergency dialysis at MGH and also violated the "Stark Act." 4AC ¶¶ 96-100. The fundamental problem with this claim is that – contrary to my directions – Hansen does not identify any specific contract he entered into with Levy. He does reference one contract, Exhibit 23 to his 4AC. Review of that contract shows it was entered into between Hansen and MGH. Dkt. No. 142 at ECF pgs. 95-99. There is no indication that Levy was a party or beneficiary of that contract.[17] The breach of contract claim cannot be stated against Levy. It is DISMISSED WITH PREJUDICE.

### D.  Unfair Business Practices

In his 4AC, Hansen alleges that Levy along with Estilo and Marin Nephrology violate Section 17200 and the "Stark Law" by steering patients and doctors to their dialysis centers and presumably away from transplants for their financial gain. 4AC ¶¶ 41, 45.[18] However, Hansen does not allege in what facility Levy had a financial interest to which Levy referred Hansen. He does allege, variously, that Levy "operates" a dialysis center and that Levy is "director" of

---

[17] The Exhibits references in Hansen's 4AC are not contracts between Hansen and Levy (or between Hansen and Estilo or Hansen and Marin Nephrology). Dkt. No. 142, Exhibits 13-23 at ECF pgs. 83-94 of 99.

[18] "The Stark Act generally prohibits a physician from referring Medicare patients to entities in which the physician has a prohibited 'financial interest.' See 42 U.S.C. § 1395nn(a)(1)." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 1000 (9th Cir. 2010).

Satellite Dialysis.  4AC ¶ 26, 41.  However, Hansen's allegations do not plausibly establish a violation of the Stark Act because there are no allegations that Levy has a financial interest in Satellite nor that it was Levy who referred Hansen to Satellite.[19]  Hansen fails to state any violation or incipient violation of the Stark Act that could state a claim under section 17200.[20]

Hansen also complains that Levy's lies cost him the kidney transplant from Swedish.  But as noted before, all allegations regarding the kidney transplant have been dismissed and are no longer in this case.  Similarly, to the extent Hansen is basing his section 17200 claim on Levy's failure to help him find another nephrologist upon termination, those allegations – as noted above – are contradicted by Hansen's own exhibits.

As to the allegations that it was unfair for Levy to terminate his relationship with Hansen and thereby force him into emergency dialysis, as noted above Hansen has failed to allege facts showing that Levy improperly terminated their doctor-patient relationship, especially considering the admitted facts regarding the TRO Hansen sought against Levy.  Hansen's own evidence demonstrates that Levy provided Hansen with adequate notice and a list of other doctors.  And Hansen has failed to allege any facts plausibly showing that he was "blackballed" by Levy.

Hansen has failed to allege facts to support his claim that Levy violated section 17200. The section 17200 claim against Levy is DISMISSED WITH PREJUDICE.[21]

---

[19] Indeed, Hansen's own documents indicate that Satellite Dialysis provides services on behalf of a number of physicians who have "privileges" at Satellite.  Dkt. No. 142 ECF pgs. 78-79 of 99.

[20] The same is true for Marin Nephrology and Estilo.  There are no allegations that the entity or doctor have a financial interest in Satellite Dialysis or that they referred Hansen there.  In addition, as Levy points out, under 42 U.S.C. § 1395nn(e)(3)(a)(v), a physician may make a referral to a clinic and be compensated at or below fair market value for "reasonable and necessary" services.

[21] Levy, joined by Estilo and Marin Nephrology, also argue that this case should be dismissed under 28 U.S.C. § 1915(e) as frivolous or malicious, as demonstrated by Hansen's prolix, contradictory, and implausible allegations in this case and the numerous state court cases he has filed against these same defendants.  Dkt. No. 148 at 23-24; Dkt. No. 149 at 10-11.  However, Hansen has not been granted permission to proceed in forma pauperis under 28 U.S.C. § 1915 in this case.  Without that permission, it is questionable whether section 1915(e) can be applied to this case.  Defendants cite no case law to support their argument under section 1915(e), and absent apposite case law I will not apply it.

## VI.    DR. ESTILO

### A.    Medical Malpractice

In the September 2018 Order, I concluded that Hansen had adequately alleged incidents of medical malpractice against Estilo occurring on or after April 4, 2016.  September 2018 Order at 12.  However, because Estilo did not have full notice of those claims (which I found could be stated by reviewing exhibits to Hansen's TAC complaints) and on Estilo's motion for reconsideration, I agreed that Estilo could move to dismiss any medical malpractice claims asserted against her in the 4AC.  October 2018 Order.

In his 4AC, Hansen alleges that: (i) Estilo (and Marin Nephrology) denied Hansen emergency medical dialysis at MGH for the past two years and turned him away from MGH; (ii) Estilo refused to treat him and supported Levy's blackballing of Hansen starting on July 5, 2016, forcing Hansen to seek emergency dialysis at MGH; and (iii) Estilo offered to help find a doctor to treat Hansen at Satellite Dialysis but it never happened.  4AC ¶¶ 74-77.

With respect to Estilo's supporting of Levy's blackballing Hansen, there are no facts alleged as to Estilo's conduct with respect to Levy's termination of their relationship or facts to plausibly suggest the Estilo herself took any steps to "blackball" Hansen and prevent him for finding a new nephrologist in Marin.[22]  Those allegations cannot support a medical malpractice claim against Estilo.

As to Hansen's claim that Estilo promised to but never helped find him another doctor to treat him at Satellite, assuming Estilo had a duty to provide that type of assistance when Hansen admits she was no longer his primary treating physician,[23] that allegation is contradicted by exhibits Hansen attached to his 4AC.  In those exhibits, Hansen admits that Estilo "broke down and offered me a doctor and to go back to the dialysis center in January. But then they wanted me to only go at one time like I had no rights."  Dkt. No. 142 at ECF pg. 54 of 99 (March 2017 email

---

[22] As noted above, Hansen fails to allege any facts to support his claim that Levy "blackballed" him and prevented Hansen from finding another nephrologist in Marin County.

[23] Hansen admits that Estilo was his doctor until he "switched" to Levy.  4AC ¶ 46.  Because Estilo was not his primary treating nephrologist at the time he was terminated by Levy, there was no "physician-patient relationship giving rise to a duty of care."  *Mero v. Sadoff*, 31 Cal. App. 4th 1466, 1467 (Cal. App. 2d Dist. 1995).

from Hansen to Dialysis Advocates).

Finally, as to Estilo's role in denying Hansen access to emergency dialysis in the last two years at MGH while she was on call, that is the claim I found plausibly pleaded in the TAC and realleged in Hansen's 4AC. 4AC ¶¶ 50, 74, 76, 88. In her motion to dismiss the 4AC, Estilo incorporates the arguments made by Levy to Hansen's similar arguments against him, contending that facts admitted by Hansen in the exhibits to his 4AC demonstrate that he was never turned away from emergency dialysis when dialysis was medically necessary. Estilo and Marin Nephrology MTD 6-7.

As noted above, the malpractice claims for denials of treatment at MGH by Levy survive. Although there are fewer details regarding Estilo (for example, we do not know the dates she was allegedly on call and therefore responsible for the denials of treatment), because Estilo's motion to dismiss rests solely on the unsuccessful arguments made by Levy in his motion to dismiss, this claim likewise survives against Estilo. For clarity however, the remaining medical malpractice claim against Estilo is *limited* to incidents when Estilo made the decision to deny Hansen emergency dialysis treatment at MGH.

## B. Breach of Contract

Hansen asserts a breach of contract claim collectively against Levy, Estilo, and Marin Nephrology, arguing that he entered into unspecified written agreements with "them" each year and their breaches have cost him a kidney transplant, good health, and millions in lost wages. In addition to the allegations regarding the kidney transplant (which have been dismissed), Hansen alleges that "they" retaliated against him and his service dog when Hansen received emergency dialysis at MGH and that they violated the "Stark Act." 4AC ¶¶ 96-100. The fundamental problem with this claim is that – contrary to my directions – Hansen does not identify any specific contract he entered into with Estilo. He does reference one contract at Exhibit 23 to his 4AC. Review of that contract shows it was entered into between Hansen and MGH. Dkt. No. 142 at ECF pgs. 95-99. There is no indication that Estilo was a party or beneficiary of that contract.[24]

---

[24] Hansen also references Exhibit 13-22 in support of his breach of contract claim, but those exhibits only contain correspondence regarding complaints Hansen made to the U.S. Department

The breach of contract claim, therefore, cannot be stated against Estilo.  It is DISMISSED WITH PREJUDICE.

### C.    ADA

Hansen alleges his ADA claim collectively against Levy, Estilo, Marin Nephrology, and MGH.  He claims that these defendants have forced him to leave his service dog in his car (instead of allowing him into MGH) and have harmed, harassed, and retaliated against Hansen and his service dog.  He specifically alleges that in July 2017 and August 2018 he was arrested for "trespassing" with his dog at MGH and his service dog was pulled out of his car many times at MGH.  4AC ¶¶ 90-95.  However, the ADA claim was dismissed WITH PREJUDICE against Estilo (and Marin Nephrology) in my prior Order.  September 2018 Order at 17.  Therefore, it cannot be reasserted in the 4AC.[25]

### D.    Unfair Business Practices

In his Section 17200 claim asserted jointly against Estilo and Marin Nephrology, Hansen alleges that: (i) Estilo would not take him back after Levy terminated their relationship and she supported Levy's blackballing and refusal to treat him; (ii) Estilo said that she would find Hansen a new doctor but never did; (iii) as a result, Hansen's only option was emergency dialysis which has harmed his health; (iv) while on call at Marin General, Estilo would refuse to give Hansen emergency dialysis during the last 2 years; and (v) Estilo has "sat by" and let all this happen to Hansen because of actions of her business partner Levy when she could have stopped it years ago.  4AC ¶¶ 46-53.

Estilo was under no obligation to renew a patient-doctor relationship with Hansen after Levy terminated their relationship.  There is no factual support for Hansen's allegation that Levy

---

of Justice, Civil Rights Division and to the Department of Health & Human Services, Office of Civil Rights and Centers for Medicare & Medicaid Services, as well as court-ordered debt collection bills and bills from MGH. Dkt. No. 142 at ECF pgs. 83-94 of 99.  None of these documents evidence a contract between Hansen and Estilo or Marin Nephrology.

[25] Even if it had not been dismissed with prejudice on the prior round of motions, I note there are still no facts alleged that Estilo engaged in any conduct personally, directed others to do so, or that Estilo was responsible for others who excluded Hansen and his dog from MGH or otherwise caused harassment of Hansen or his dog at MGH.

blackballed him with other nephrologists, much less that Estilo could be liable for that conduct. Hansen's own allegations show that Estilo found another doctor to provide him dialysis, but Hansen was dissatisfied with that arrangement. Finally, with respect to the allegations that Estilo turned Hansen away from emergency dialysis at MGH when she was on call, that claim survives solely as a medical malpractice claim. Hansen's allegations do not support a breach of contract claim and nothing is added by attempting to also characterize those alleged wrongs as unfair business practices under section 17200.

Therefore, the section 17200 claim against Estilo is DISMISSED WITH PREJUDICE.

## VII.    MARIN GENERAL HOSPITAL

### A.    Medical Malpractice

In the 4AC, Hansen realleges and provides additional details regarding his assertions that he has been improperly denied emergency dialysis at MGH. 4AC ¶¶ 86, 88, 89. In its motion to dismiss the 4AC, MGH did not address or otherwise challenge Hansen's allegations of medical malpractice arising on or after April 4, 2016, because I had previously found those claims to be adequately alleged in the TAC. MGH Motion to Dismiss (Dkt. No. 146). However, in light of Levy's extensive challenge to the plausibility of those claims in Levy's motion to dismiss, in Reply MGH argues that the medical malpractice claims against it must be dismissed because Hansen's own exhibits to the 4AC show that he was provided emergency dialysis at MGH when he met the requirements. MGH Reply (Dkt. No. 156) 1-2. But as noted above, there are no judicially noticeable facts in the exhibits to Hansen's complaints that foreclose each alleged instance of improper denial of emergency dialysis by Levy or Estilo at MGH.

Therefore, Hansen's medical malpractice claim against MGH survives for the limited set of instances where Hansen alleged he was improperly denied emergency dialysis at MGH or for those services that were provided in a manner that violated the doctors' duty of care. The motion to dismiss the medical malpractice claim is DENIED.

### B.    ADA

Because the scope of Hansen's ADA claim was unclear in the TAC, MGH was given leave to move to dismiss the ADA claim. September 2018 Order at 16, 17. In his 4AC, Hansen

provides some additional details and generally alleges that MGH violated the ADA when it denied him service at MGH when he had his service dog with him and when MGH harassed him or his dog at MGH. 4AC ¶¶ 34-37, 90-93, 95.

In its motion, MGH acknowledges that the ADA provides a right of access to facilities with service dogs but argues that Hansen has failed to allege that his dog meets the criteria for a "service animal" under the ADA (28 C.F.R. § 35.104). It also challenges Hansen's arguments that Hansen's dog was improperly excluded from MGH, noting that the ADA regulations provide that even properly trained service dogs may be excluded. MGH MTD 11 (citing 28 C.F.R. § 35.136). It implies that Hansen's dog is untrained, not housebroken, and was not adequately supervised and, therefore, it cannot be liable under the ADA. *Id*. However, its assertions and characterizations of comments in the exhibits regarding why Hansen's dog was growling and how Hansen's dog was treated are subject to interpretation and consideration of those comments do not require dismissal. Hansen has adequately pleaded that his "service" dog was improperly excluded from MGH and that he was retaliated against as a result of trying to bring his service dog to MGH with him. MGH's defenses may ultimately be successful, but they are appropriately raised on a motion for summary judgment and not on a motion to dismiss.

The motion to dismiss the ADA claim is DENIED.

### C.    Breach of Contract

In my prior Order, I explained that Hansen was required to "identify each contract with each defendant by name or subject matter, and then explain his theory as to why each defendant breached each identified contract." September 2018 Order at 18. In the 4AC, he attempts to do so by asserting that he and MGH entered into a "contract" every time he was admitted to MGH and references Exhibit 23 as an example. 4AC ¶ 101.

MGH contends that Exhibit 23 is comprised of a "Conditions of Admissions" form and a "Medicare Rights" message, neither of which are contracts between Hansen and MGH. However, Hansen has also attached medical bills from MGH which, plausibly, resulted from agreements to admit him and provide him emergency medical services, as well as a signed admissions document. Dkt. No. 142 ECF pgs. 91-99. Unlike some of the other defendants – whose provision of services

under a contract during the relevant time frame was questionable (*e.g.,* Sutter and Anthem) or who may not have had contracts with Hansen governing their provision of services during the relevant timeframe (*e.g.,* Levy and Estilo) – MGH was regularly admitting and providing emergency services to Hansen during the relevant timeframe. Hansen has adequately alleged his breach of contract claim against MGH.

The motion to dismiss the breach of contract claim against MGH is DENIED.

### D. Unfair Business Practices

Hansen argues that MGH violated section 17200 through the following conduct: having him arrested when he sought medical attention, refusing him emergency dialysis, refusing to help him find a source for non-emergency dialysis, and having no respect to Hansen or his service dog. 4AC ¶¶ 66-69. His claims with respect to harassment of and denial of treatment with his service dog under the ADA survive, as do Hansen's medical malpractice claims. Nothing is added to these claims by the assertion of an unfair business practices claim under section 17200. MGH's motion to dismiss the section 17200 claim is GRANTED and this claim is DISMISSED WITH PREJUDICE.

### CONCLUSION

For the reasons discussed above, Hansen has failed to state any claim against Anthem, Sutter, or Satellite Dialysis. The motions to dismiss filed by Anthem, Sutter, and Satellite Dialysis are GRANTED and these defendants are DISMISSED from this action WITH PREJUDICE.

The motions to dismiss filed by Levy, Estilo, and Marin Nephrology are GRANTED in part and DENIED in part. The medical malpractice claims survive against Levy and Estilo (and, relatedly, against Marin Nephrology) but are limited to instances where Levy or Estilo were the doctors at MGH who allegedly denied Hansen emergency dialysis. The breach of contract, ADA, and section 17200 claims against Levy, Estilo, and Marin Nephrology are DISMISSED WITH PREJUDICE.

MGH's motion to dismiss is DENIED.

A Case Management Conference is set for May 7, 2019 at 2:00 p.m. The remaining parties shall file the Joint Case Management Conference Statement, proposing a trial and pre-trial

schedule, on April 30, 2019.

**IT IS SO ORDERED.**

Dated: April 5, 2019

William H. Orrick
United States District Judge